IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Melissa Gulledge Bradshaw, ) | C/A No. 0:16-3530-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Melissa Gulledge Bradshaw, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the named defendant because she became the Acting Commissioner of Social Security on January 23, 2017.

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;

    (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)    whether the claimant can perform her past relevant work; and

    (5)    whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).

**ADMINISTRATIVE PROCEEDINGS**

In June 2013, Bradshaw applied for DIB, alleging disability beginning March 21, 2012. Bradshaw's application was denied initially and upon reconsideration, and she requested a hearing before an ALJ. A video hearing was held on April 21, 2015, at which Bradshaw appeared and testified, and was represented by Christi B. McDaniel, Esquire. The ALJ issued a decision on May 14, 2015 finding that Bradshaw was not disabled.[3] (Tr. 11-29.)

Bradshaw was born in 1967 and was forty-seven years old on her date last insured. (Tr. 28.) She has a high school education and has past relevant work experience as a branch and assistant manager at a bank, and as a customer service manager at a grocery store. (Tr. 220) Bradshaw alleged disability due to degenerative disc disease, bipolar disorder, cervical spondylosis with myelopathy, multiple personalities, arthritis, neuropathy, and constant pain. (Tr. 219.)

In applying the five-step sequential process, the ALJ found that Bradshaw had not engaged in substantial gainful activity since her alleged onset date of May 21, 2012 through her date last insured of December 31, 2014. The ALJ also determined that, through the date last insured, Bradshaw's degenerative disc disease status/post cervical fusion; degenerative disc disease of the lumbar spine; osteoarthritis; right shoulder subacromial impingement; obesity; bipolar disorder; and post-traumatic stress disorder were severe impairments. However, the ALJ found that, through the date last insured, Bradshaw did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

---

[3] The ALJ also noted that Bradshaw previously applied for DIB in June 2009 alleging disability beginning October 30, 2008. In that matter, an unfavorable decision was issued by the ALJ, the Appeals Council denied Bradshaw's request for review, and the United States District Court affirmed the Commissioner's decision.

Appendix 1 (the "Listings"). The ALJ further found that, through the date last insured, Bradshaw retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) except she is capable of frequent balancing and no climbing of ladders, ropes or scaffolds. She can perform occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling. She can perform no more than frequent reaching above shoulder bilaterally and she can have no concentrated exposure to hazards such as unprotected heights. She is able to understand, remember and carry out simple instructions in a work setting that does not involve interaction with the public and no more than occasional interaction with co-workers and supervisors.

(Tr. 17.) The ALJ found that, through the date last insured, Bradshaw was unable to perform any past relevant work but that, considering Bradshaw's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers that Bradshaw could perform. Therefore, the ALJ found that Bradshaw was not disabled from the alleged onset date of March 21, 2012 through the date last insured of December 31, 2014.

The Appeals Council denied Bradshaw's request for review on September 9, 2016, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

*PJG*

than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Although Bradshaw does not list specific issues for this judicial review, she appears to raise the following issues:

I. Does substantial evidence support the assessed residual functional capacity?

II. Did the administrative law judge adequately consider Plaintiff's obesity?

III. Does substantial evidence support the ALJ's evaluation of Plaintiff's subjective complaints?

IV. Did the administrative law judge's hypothetical question properly account for Plaintiff's difficulties in concentration, persistence, and pace?

## DISCUSSION

**A. Residual Functional Capacity Assessment**

A claimant's "residual functional capacity is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. As stated above, the ALJ found that Bradshaw retained the residual functional capacity to

perform light work as defined in 20 CFR 404.1567(b) except she is capable of frequent balancing and no climbing of ladders, ropes or scaffolds. She can perform occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling. She can perform no more than frequent reaching above shoulder bilaterally and she can have no concentrated exposure to hazards such as unprotected heights. She is able to understand, remember and carry out simple instructions in a work setting that does not involve interaction with the public and no more than occasional interaction with co-workers and supervisors.

(Tr. 17.)

Bradshaw argues that in determining Bradshaw's residual functional capacity, the ALJ failed to consider evidence showing that she "has severe, chronic pain in multiple areas of her body, particularly her neck, hands, hips, low back, and feet." (Pl.'s Br. at 20, ECF No. 12 at 20.) Bradshaw argues that the pain in her hands and her carpal tunnel syndrome would preclude the light work lifting requirements, and her other pain would make the standing and walking requirements, as well as bending, twisting, pushing, and pulling, extremely difficult. Bradshaw argues that "[t]he Commissioner minimized [the] effect of the Plaintiff's erosive osteoarthritis, neuropathy[,] and chronic neck and low back pain." (Id.)

The court finds Bradshaw's speculative argument fails to demonstrate that the ALJ's residual functional capacity analysis was unsupported by substantial evidence or controlled by an error of law. In fact, in support of his residual functional capacity assessment, the ALJ explicitly and extensively discussed the medical evidence of record, including Bradshaw's treatment notes, the clinical testing and radiograph results, the medical opinions, and Bradshaw's testimony. (See Tr. 17-28.) Bradshaw has failed to direct the court to any evidence that the ALJ failed to consider and weigh.

Citing SSR 96-8p, Bradshaw also argues that the evidence does not support a finding that she can perform sustained work activities in an ordinary work setting on a regular and continuing basis.

Bradshaw argues that there is evidence that she spends many days not wanting to leave her room and that there are days that she will not shower or change clothing due to her bipolar disorder and depression. Bradshaw further alleges that Dr. Fox's notes indicate that Bradshaw's "baseline condition is still a rather fragile one, [] her GAF was never more than 50 during her visits at the beginning of 2012," and by "mid-2012 until 2015, her GAF was 45." (Pl.'s Br. at 21, ECF No. 12 at 21.) Bradshaw argues that Dr. Fox treated Bradshaw for many years and noted that Bradshaw had depressive symptoms, distracted attention and concentration, diminished interests and energy, and increased irritability.

As an initial matter, Bradshaw bears the burden of producing evidence demonstrating how her impairments affected her functioning during the relevant time period. See 20 C.F.R. § 404.1512(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning."). Moreover, upon review of the record as a whole, the court finds that Bradshaw has not demonstrated that the ALJ's residual functional capacity analysis is unsupported by substantial evidence or controlled by an error of law. In compliance with SSR 96-8p, the ALJ provided an extensive narrative discussion, which included a full discussion of the medical and nonmedical evidence. The ALJ's discussion explained his resolution of inconsistencies or ambiguities of the evidence in the case record, such as his evaluation of Bradshaw's subjective complaints, as well as the medical evidence. With regard to Dr. Fox's notes as well as his opinions, the court observes that the ALJ specifically evaluated the treatment notes and opinions from Dr. Fox in evaluating the evidence in this matter and provided reasons for

PJG

discounting Dr. Fox's opinions. Moreover, the issue of whether a claimant is disabled is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance. See 20 C.F.R. § 404.1527(d). Thus, the court finds that remand is not warranted on this ground.

**B.    Obesity**

Bradshaw also argues that the ALJ failed to consider Bradshaw's obesity in determining her residual functional capacity as required by SSR 02-01p. Bradshaw argues that the ALJ failed to "specifically state how []he applied obesity to the actual impairments that the Plaintiff has or how []he included obesity in the formulation of her residual functional capacity." (Pl.'s Br. at 21, ECF No. 12 at 21.) Bradshaw points out that the ALJ acknowledged that Bradshaw generally weighs between 225 to 232 pounds with a height of 65 inches, placing Bradshaw in the range of obesity, and that the ALJ acknowledged that the obesity could exacerbate Bradshaw's musculoskeletal impairments. Bradshaw further notes that the ALJ stated that "[t]he effects of obesity have been considered in the development of the residual functional capacity, which provides for a reduced range of light work." (Id. at 22) (citing Tr. 21). However, Bradshaw argues that the ALJ failed to comply with SSR 02-01p because he did not actually explain the impact obesity had on Bradshaw's physical and mental limitations. Bradshaw suggests that her impairments would almost certainly be exacerbated by obesity and that obesity plus her other impairments would keep her from working at any job on a sustained basis.

Social Security Ruling ("SSR") 02-01p states that obesity is a medically determinable impairment that an ALJ must consider in evaluating disability, that the combined effects of obesity and other impairments can be greater than the effects of each single impairment considered individually, and that obesity must be considered when assessing residual functional capacity.

PJG

In this case, the ALJ does appear to have expressly examined the impact of Bradshaw's obesity in the decision and in formulating her residual functional capacity. In fact, the ALJ found that Bradshaw's obesity was a severe impairment and indicated that he took into account the effects obesity may have on other impairments throughout the sequential process "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity." (Tr. 15.) The ALJ later reiterated that he considered the adverse impact obesity may have on Bradshaw's impairments and stated that "[t]he effects of obesity have been considered in the development of the residual functional capacity, which provides for a reduced range of light work." (Tr. 21.) Bradshaw has failed to demonstrate that additional limitations are warranted. Thus, even if the ALJ erred in failing to further discuss her obesity, Bradshaw cannot demonstrate any harm and remand is not warranted.[4] See SSR 02-01p (providing that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.").

**C.      Subjective Complaints**

Next, Bradshaw argues that the ALJ erred in determining her residual functional capacity before assessing her credibility, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). As an initial matter, the court notes that the language used by the ALJ in this case does not suggest that Bradshaw's ability to work was determined first and was then used to determine the claimant's credibility. Id. at 639. In Mascio, the ALJ stated that "the claimant's statements concerning the

---

[4] Moreover, as pointed out by the Commissioner, this is the first time that Bradshaw has alleged any limitations stemming from her obesity.

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. In this case, the ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision," and the ALJ continued, expressly stating that

> [i]n arriving at the residual functional capacity stated herein, the undersigned has also considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The claimant's allegations of pain and other limiting symptoms, including mental symptoms, which she asserts prevent her from performing any substantial gainful activity, are not completely credible. Although the claimant has impairments that could reasonably be expected to cause some pain or discomfort, the medical evidence fails to reveal findings to support pain or discomfort to the degree alleged.

(Tr. 23.)

However, even if the language used by the ALJ in this case was improper, this error can be harmless if the ALJ properly analyzed Bradshaw's credibility elsewhere. Id. Bradshaw argues that any error is not harmless because the ALJ relied on boilerplate language without analysis and improperly discounted her subjective complaints based on two phone messages. Upon review of the ALJ's decision and the record in this matter, the court disagrees and finds any error by the ALJ to be harmless.

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation omitted). During the second step the

ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4.[5] "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

---

[5] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. See 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). Because this application was adjudicated prior to the effective date of SSR 16-3p, the court analyzes Bradshaw's allegations under SSR 96-7p. See Savage v. Berryhill, C/A No. 5:16-1138-KDW, 2017 WL 3124177, at n.2 (D.S.C. July 24, 2017) (applying SSR 96-7p under the same circumstances).

PJG

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ acknowledged Bradshaw's testimony and allegations; however, he found it was inconsistent with the record. After summarizing all the medical evidence in detail (Tr. 18-23), the ALJ found that the evidence "failed to reveal findings to support pain or discomfort to the degree alleged" (Tr. 23) and that Bradshaw's daily activities were not consistent with total disability (Tr. 24). In support of her position that any error is not harmless, Bradshaw's only argument appears to challenge the ALJ's reliance on two phone messages (rescheduling one appointment because she had to care for her grandchild and another because she had to care for her sister) in discussing the inconsistency between Bradshaw's allegations and her daily activities. The court finds that remand is not warranted to further consider Bradshaw's subjective complaints. Assuming without deciding that these two incidents are not inconsistent with her allegations, the court observes that this was one factor among several others that the ALJ properly considered. See 20 C.F.R. § 404.1529(c)(3).

Moreover, after carefully considering Bradshaw's arguments and the record in this matter, the court finds that Bradshaw has failed to demonstrate that the ALJ's evaluation of Bradshaw's subjective complaints is unsupported by substantial evidence or controlled by a harmful error of law. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

*PJG*

judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). The ALJ's decision reflects careful consideration of the medical evidence and the limitations stemming from Bradshaw's impairments and provides reasons for discounting Bradshaw's subjective complaints. In this case, Bradshaw has failed to demonstrate that additional functional limitations are warranted in this case or that the ALJ's evaluation of subjective complaints is unsupported. As stated above, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 595 (stating that a claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers"); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

**D.     Concentration, Persistence, or Pace**

Finally, Bradshaw appears to challenge the ALJ's residual functional capacity assessment, again relying on the decision in Mascio. Specifically, Bradshaw appears to argue that the residual functional capacity as determined by the ALJ fails to account for his finding that Bradshaw had "moderate limitations" with concentration, persistence, or pace at Step Three of the sequential evaluation. In Mascio, the Fourth Circuit held that remand was warranted in part because the ALJ's hypothetical question to the vocational expert was legally insufficient in that it failed to include—without any explanation by the ALJ—the ALJ's finding of moderate limitation on the

*PJG*

claimant's ability to maintain concentration, persistence, or pace at Step Three. Mascio, 780 F.3d at 638. The Fourth Circuit stated that it "agree[d] with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' " Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). However, the Court continued, stating:

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Mascio, 780 F.3d at 638 (citation omitted).

Contrary to Bradshaw's conclusory argument, her case is not directly on point with Mascio. Unlike in Mascio, the ALJ in Bradshaw's case did not restrict the hypothetical question to simple, routine tasks or unskilled work. Rather, in this case, the hypothetical question indicated that Bradshaw was "able to understand, remember and carry out simple instructions in a work setting that did not involve interaction with the public. And no more than occasional interaction with coworkers and supervisors." (Tr. 58.) Further, in considering the evidence, the ALJ observed that examination "notes reflect a stable mental status with overactive attention and concentration, normal speech, memory, knowledge and judgment and excellent insight." (Tr. 26; see also Tr. 21.) Moreover, Bradshaw has failed to demonstrate or even allege that any greater limitations are warranted in this area. Thus, the court finds that remand is not warranted on this ground.

**ORDER**

For the foregoing reasons, the court finds that Bradshaw has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

/s/ Paige J. Gossett
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 12, 2018
Columbia, South Carolina